EDWARD WHITCOMB ET AL., APPELLANTS, V. D. J. F. REED ET AL., BOARD OF SUPERVISORS OF SALINE COUNTY, APPELLEES.

**Bridges in Counties under Township Organization.**
Prior to the act of 1887, in a county under the township system of government, the respective towns, and not the county board of supervisors, were vested with the power and charged with the duty of building and repairing the bridges in such towns, and the letting of contracts therefor.

APPEAL from the district court of Saline county. Tried below before BROADY, J.

*Abbott & Abbott*, for appellants, cited: Comp. Stat., Ch. 78, Secs. 83, 91, 97.

*J. C. Smith*, for appellees.

COBB, J.

This cause comes up on appeal from the judgment of the district court of Saline county, in dismissing the action, which was brought by the plaintiffs, certain taxpayers, who sue as well for themselves as for all other taxpayers of said county, against the defendants, who were the members of the board of supervisors of said county.

Saline county is, and has been since 1883, under township government. The petition alleges, "that said county board has, contrary to the statute, assumed authority and control over all the roads and bridges of the county, and have unlawfully assumed the power to build, construct, and repair any and all roads, bridges, and culverts in said county, and are proceeding to let contracts therefor, in utter disregard to the power and authority of the several town boards of said county; that in pursuance of such illegal and usurped authority, the said county board did,

at a session of said board held at Wilber, the county seat of said county, on the sixth day of July, 1885, resolve and determine, by vote of said board, to proceed to build the following bridges in said county:" Here follows a list of twelve bridges scattered throughout and situated in the several towns of said county, estimated to cost from $100 to $2,400 each. "And the plaintiff alleges, that no emergency has arisen within any of said towns requiring the action of the county board relative to the roads or bridges therein, nor has any one of said towns exhausted its statutory resources in that behalf; that in fact several of said towns have taken no action whatever towards raising a road and bridge fund. And the said county board did, in pursuance of said usurped and illegal authority, by resolution passed by vote of said board at said meeting, instruct and order the county clerk of said county to advertise for bids for the construction of said bridges; said bids to be made to said county on or before the 25th day of August, 1885. And plaintiff alleges and charges the fact to be, that the said county board threaten, intend to, and will, unless restrained by the order of this court, proceed to receive such bids and let the contract for the building of said bridges by the said county board alone, and make the costs thereof a charge against said county; entirely ignoring the several town boards of the towns wherein said bridges are situated. And the plaintiffs allege that the above estimates of the cost of said bridges have been obtained by the plaintiffs from persons who are well informed in the matter of bridge building in this county, and the plaintiffs believe such information to be correct, and that the aggregate cost of said bridges to the county will not be less than $7,000, thereby imposing a great and burdensome indebtedness upon said county, and which will result in a great and irreparable injury to the plaintiffs, and to all of the tax-payers of said county." With prayer for injunction and relief.

A temporary order of injunction was issued, and defendants answered in the action, admitting the formal parts of said petition, that the said county is under township organization and government, that defendants are the duly qualified and acting board of supervisors of said county, and that the plaintiffs are residents of, and tax-payers in, said Saline county. But denying, " that as such board they have assumed the power to build, construct, and repair any and all roads, bridges, and culverts in said county, and are proceeding to let contracts therefor, but admit that, as such board, they have advertised for bids for the erection of the several bridges mentioned in plaintiffs' petition, and will, if not restrained from so doing by process of law, let contracts for the erection of the same. They allege that each of said bridges will, if constructed as intended by these defendants, be upon a public road. They deny that the said several bridges will cost the sum mentioned by plaintiffs, but allege that the same will cost the sum of $5,400, and no more, said sum being much less than the said bridges would cost if built by the several townships of said county.

" They allege that it was and is the purpose and intention of defendants, as such board, to erect each and all of said bridges entirely from county funds, to-wit, from the bridge funds of said county. They allege that defendants, as such board, have ample means under their control to erect each and all of said bridges. They deny that, in the matter of the intended erection of said bridges, they, as such board, were in any manner acting contrary to, or without authority of law," etc.

At the hearing before the district court, a judgment was rendered dismissing the action. But upon notice of appeal being given, and a supersedeas bond filed by the plaintiffs, which said bond was approved by the clerk of said district court, it was ordered that the injunction

theretofore issued be continued until the appeal be passed upon in the supreme court.

The question here presented is, whether, in a county under the township system of government, the county board of supervisors possesses the power to enter upon and carry on a general system of ordinary bridge building throughout the several towns of the county?

At the date of the passage of the several acts which, although altered and amended in various particulars, yet maintaining most of their original provisions, constitute chapters 18 and 78 of the Compiled Statutes of this state, township organization or government was unknown to our laws. So that the original plan, as well as the details, of the laws in relation to counties and county officers, and to roads and bridges, were framed with reference to the county commissioner system of government alone. Since the adoption of the present constitution, by virtue of a provision by which counties may adopt the township system of government, there have been certain provisions enacted by way of amendment to said chapters, both in their application to counties which may have adopted the township, and to those remaining under the county commissioner system. While it is to be regretted that these provisions are not more explicit and clear in their application to the respective characters of county government, yet I think them susceptible of being understood and applied.

It is the chief, if not the only, merit of the township system over that of the county commissioner system of government, that it tends to localize, as well the appropriation and disbursement, as the assessment and collection of the taxes. It gives to every voter of the town where the road and other local taxes are levied and collected, a direct voice in their expenditure, and in the designation of the objects and purposes thereof. And this may be presumed to have been the chief object which the people of Saline county had in view when they availed themselves of the

provision of the constitution and the statute, and passed from the county commissioner to the township organization.

Chapter 18 of the Compiled Statutes is devoted in its three first articles to the organization, powers, and duties of counties and county officers. Article IV. of the chapter is entitled, "Township organization." Section 13 of said article is devoted to the powers of electors, and provides that, "The electors present at the annual town-meeting shall have power   *   *   *   *Eighth,* To direct the raising of money by taxation for the following purposes: 1st. For constructing or repairing roads and bridges within the town to the extent allowed by law.   *   *   *   4th. For the purpose of building or repairing bridges over streams dividing said town from any other town." Again, section 17 provides that, " The electors of each town shall have power at their annual town-meeting to elect such town officers as may be required to be chosen, to direct the institution and defense of suits at law or in equity in which such town may be a party or interested; to direct such sum to be raised in such town for the support and maintenance of roads and bridges, or for any other purpose provided by law, as they may deem necessary   *   *   *." And again, section 20 provides that, "The electors at special town-meetings, when properly convened, shall have full power to fill vacancies in any of the town offices when they shall not already have been filled by appointment; to provide for raising money for repairing highways, or building or repairing bridges, in case of emergency, and to direct the building or repairing thereof.   *   *   *." Section 54 provides that, "The moneys necessary to defray the town charges of each town shall be levied on the taxable property in such town, in the manner prescribed by law for raising revenue. The rate of taxation for town purposes shall not exceed, for roads, two mills on each dollar of the valuation; for bridges, two mills on each dollar of the valuation; for all other purposes, three mills on each dol-

lar of the valuation. And if the electors at the annual town-meeting fail to vote a tax to pay the town charges hereinbefore specified, or the town board fail to certify up to the county board the amount of the tax voted, if any, by a town-meeting, then the county board shall have power, and it shall be the duty of such county board to levy upon the taxable property in said town a tax sufficient to pay all such town charges."

From a consideration of the above provisions, it seems quite clear that the duty is imposed upon the towns of a county under township government to build and repair the bridges necessary to be built and maintained within its limits, and to assist in building and repairing those upon its boundaries, and in case of a failure upon its part to levy the necessary taxes for such purpose, in any year, it is the duty of the county board to make such levy, but such taxes, by whomsoever levied, are nevertheless town taxes, and their disbursemment still devolves upon the town.

Chapter 78 is devoted to roads, and sections from one to 90, inclusive, seem to be applicable to roads and bridges in counties under the commissioner system of government. Sections 91 to 102, inclusive, are devoted to roads and bridges in counties under township government. Section 91 provides that, " In counties under township organization, all moneys paid to the township treasurer in discharge of township road tax, and all money paid in discharge of labor tax, shall constitute a township road fund, one-half of which shall be held by said treasurer, subject to the order of the town board, and which shall be at their disposal for the general benefit of the township, for road and bridge purposes; the other half of such money shall be paid by the town treasurer to the overseer of the district from which such tax is collected, and expended by such overseer only for the following purposes: *First.* For the construction and repair of bridges

and culverts, and making fire-guards along the lines of the roads. *Second.* For the payment of demands for right of way of any public road. *Third.* For the payment of wages of overseers, and for necessary guide-boards. *Fourth.* For the payment of wages of commissioners of roads, surveyor, chainman, and other persons engaged in locating or altering any county road, if the road be finally established or altered as hereinbefore provided. *Fifth.* For work and repairs on roads."

I here copy section 97 of the said chapter: "All contracts for the erection and reparation of bridges and approaches thereto, for the building of culverts and improvements on roads, within the limits of any township, the cost or expense of which shall exceed one hundred dollars, shall be let by the town board to the lowest competent bidder; but no contract shall be entered into for a greater sum than the amount of money on hand in the township road fund derived from the levy of previous years, and two-thirds of the levy of the current year, together with the amount of money on hand belonging to the district where such work is to be performed. The contract shall be let and the successful bidder give bond as provided in sections 83, 84, and 85, for the letting of contracts in counties not under township organization; and all the provisions of said sections shall apply, so far as consistent, to the letting of contracts provided for in this section; *Provided,* That where any work is to be performed or contract let, the cost of which is to be paid by order of the county board entirely out of the county road fund, or by the entire county, the contract therefor shall be let by the county board in the same manner as provided in sections 83, 84, and 85, for the letting of contracts in counties not under township organization."

Section 98 provides for apportioning the expense of public work in townships between the several road districts in which such work shall be performed, etc.

Section 100 I quote in full: "When it shall be neces-
sary to build, construct, or repair any bridge, or road, in
any town, which would be an unreasonable burden to the
same, the cost of which will be more than can be raised
in one year by ordinary road taxes in such town, the town
board shall present a petition to the county board of the
county in which such town is situated, praying for an ap-
propriation from the county treasury to aid in the build-
ing, constructing, or repairing of such bridge or road, and
such county board may (a majority of all the members
elect voting for the same) make an appropriation of so
much for that purpose as in their judgment the nature of
the case requires and the funds of the county will justify;
said appropriation to be expended under the supervision
of an authorized agent or agents of the county, if the
county board shall so order. In cases where the county
grants aid as aforesaid, the contract shall be let by
the town board, under the provisions of sections 83, 84,
and 85."

These provisions, except those contained in the proviso
to section 97, are quite consistent with those of chapter
18, hereinbefore referred to, and clearly contemplate the
carrying out of the system of local township taxation,
expenditure, and responsibility, which constitutes the dis-
tinguishing feature of the system of township organiza-
tion and government. Nor is it necessary, in order to
give effect and meaning to the language of the said
proviso, to construe it to give authority to the county
board to take from the towns the duty and responsibility
of building the local bridges within their boundaries.
Section 58 gives to the county board the discretionary
power, whenever there is sufficient money on hand in the
county road fund, to build or repair any bridge or bridges
within the limits of any incorporated city or village in
their county. This provision is, by its nature, applicable
to counties under the township, as well as those under the

commissioner system of government, and furnishes an ample field for the application of the proviso under consideration, without giving it a construction and meaning which would overturn the system of local township government.

This cause had been tried and determined in the district court, and was pending in this court on appeal at the date of the passage of the act of 1887, entitled "An act to provide for the building, maintaining, and repairing certain bridges in counties under township organization" [Laws 1887, Ch. 72], and as said act repeals none of the provisions of the statute in force when this controversy arose, or was tried, in the court below, nor do its terms make it applicable to matters or rights in litigation, the important questions which will arise upon the occurrence of a case to which said act is applicable will not be here considered. The appellees having filed no brief, I am not advised of the ground upon which the action of the county board was sought to be sustained.

The decree of the district court is reversed, and the cause remanded to that court with a direction to enter a decree for the plaintiffs in accordance with the prayer of the petition.

DECREE ACCORDINGLY.

THE other judges concur.